UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Case No: 1:11-CR-5 |
| v. ) | |
| ) | |
| MICHAEL ANTHONY DOWLEN ) | Chief Judge Curtis L. Collier |
| ) | |

**MEMORANDUM**

Following conviction on twenty-nine counts of bank fraud in violation of 18 U.S.C. § 1344, the Court sentenced Defendant Michael Dowlen ("Defendant") on November 3, 2011. Now before the Court is Defendant's motion to remain on bond pending appeal (Court File No. 38), which the government opposed (Court File No. 41). For the reasons discussed below, the Court will **DENY** Defendant's motion (Court File No. 38).

I.  BACKGROUND

Defendant ran a construction business, the Dowlen Construction Company, in Chattanooga from May 1978 until his company failed in March 2009. The Federal Bureau of Investigation began an investigation of Defendant in 2010, and discovered he was involved in what appeared to be a check-kiting scheme during 2008. Defendant held accounts at two banks, and wrote over fifty checks between the two banks during the period of the scheme.

Also during this time, Defendant contracted with two couples, the Howards and the Shoemakers, to sell them houses in a development Defendant was building. Initial contact with the Shoemakers occurred in April 2008, and with the Howards in May 2008. After receiving down payments from each couple, Defendant, in August 2008, sought additional payments from each.

These payments were deposited and, according to the government, used as part of Defendant's bank fraud scheme.[1] When the development Defendant was building went into foreclosure, the Howards lost $100,000 and the Shoemakers suffered a $150,000 loss.

The government filed a superseding indictment against Defendant in May 2011 alleging interstate transportation of fraudulently obtained money, bank fraud, and criminal derived monetary transactions. In July 2011, a jury convicted Defendant of twenty-nine counts of bank fraud.[2] The particular type of bank fraud involved was check kiting. After being sentenced in early November 2011, Defendant was released on bond. He is scheduled to self-report on January 6, 2012. Defendant has filed a notice of appeal of his conviction (Court File No. 40) and, in the motion now before the Court, asks to remain on bond pending the appeal.

**II.    ANALYSIS**

A judicial officer shall order a person who has been found guilty of an offense and sentenced to a term of imprisonment be detained, unless certain conditions are met. 18 U.S.C. § 3143(b). This provision creates a presumption a defendant who is convicted of a crime may not be released pending appeal unless he shows by clear and convincing evidence he is not likely to flee or pose a danger to the community. *United States v. Vance*, 851 F.2d 166, 169 (6th Cir. 1988). An individual may be released pending appeal if a judicial officer finds by clear and convincing evidence 1) the "person is not likely to flee or pose a danger" to the community, and the appeal is not for the purpose

---

[1] Defendant contests the checks from the Howards and Shoemakers were part of the alleged bank fraud scheme. This issue is discussed below.

[2] Defendant was found not guilty on the two counts each of fraudulently obtained money and criminal derived monetary transactions.

2

of delay;[3] and 2) "raises a substantial question of law or fact likely to result in" a reversal, new trial, sentence that does not include imprisonment, or "a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process." 18 U.S.C. § 3143(b). Defendant contends he is not a danger to the community or a flight risk, and the issues to be raised on appeal constitute substantial questions of law and fact likely to result in a reversal, an order for a new trial, or a reduced sentence.

### A. Not Likely to Flee or Pose a Danger to the Community

The Court finds by clear and convincing evidence Defendant is not likely to flee or pose a danger to the community under 18 U.S.C. § 3143(b)(1)(A). Defendant has no significant criminal history prior to the current case.[4] Defendant was released on bond before and after trial and complied with the conditions of release and made all necessary court appearances. He is employed and has significant family responsibilities. Finally, at sentencing and in its brief, the government acknowledged Defendant is neither a flight risk nor a danger to the community. All of these factors leads the Court to conclude Defendant satisfies the first prong of the § 3143(b) analysis.

### B. Appeal Does Not Raise Substantial Question of Law or Fact

Under the second prong of the § 3143(b) analysis, an "appeal raises a substantial question when the appeal presents a close question or one that could go either way." *United States v. Pollard*, 778 F.2d 1177, 1182 (6th Cir. 1985) (internal citation and quotations omitted). A substantial question is a question that is "either novel," has not been "decided by controlling precedent," or is

---

[3] Defendant argues his appeal is not for the purpose of delay, and the Court will give him the benefit of the doubt on this issue.

[4] Defendant has one previous conviction in state court in Florida for fraud-ticket scalping.

3

"fairly doubtful." *United States v. Miller*, 753 F.2d 19, 23 (3d Cir. 1985); *see also United States v. Randell*, 761 F.2d 122, 125 (2d Cir. 1985). The Court is not required to find "it committed reversible error" nor must it find the defendant is "likely or probable" to prevail on appeal. *Pollard*, 778 F.2d at 1181-82; *United States v. Powell*, 761 F.2d 1227, 1234 (8th Cir. 1985). The question should, however, be "so integral to the merits of the conviction that it is more probable than not that reversal or a new trial will occur if the question is decided in the defendant's favor." *Pollard*, 778 F.2d at 1182 (internal citation and quotations omitted). Thus, not only must the question be substantial, but the resolution of the question on appeal must likely result in a reversal, new trial, sentence that does not include imprisonment, or "a reduced sentence to a term of imprisonment less than the total of the time already served plus expected duration of the appeal process." 18 U.S.C. § 3143(b)(1)(B).

Defendant offers three theories in support of his motion. First, he contends the Court erred in finding admissible the testimony of the Howards and the Shoemakers, and such error warrants reversal or a new trial. Second, Defendant challenges the Court's finding regarding the amount of loss at Defendant's sentencing. Finally, Defendant claims the Court erred in not departing downward at sentencing.[5] The Court will address each of these arguments in turn.

### 1. Admissibility of Testimony

Defendant argues testimony from the Howards and Shoemakers should not have been

---

[5] Defendant also suggests an additional argument in his brief: "[Defendant] presented objections to certain jury charges and believes those objections are meritorious and could result in reversal" (Court File No. 38, p. 3). Defendant does not, however, elaborate; indeed, this sentence–which stands alone as a single paragraph in Defendant's brief–constitutes the entirety of Defendant's argument on this point. Because Defendant has not taken the time to indicate which jury charge objections he believes are meritorious and in what way, the Court will not consider this argument.

4

admitted at trial because that testimony was not relevant, or, alternatively, if relevant, the prejudice to Defendant substantially outweighed the testimony's probative value. Defendant contends no evidence connected payments made by the Howards and Shoemakers for houses Defendant was constructing for them to the check-kiting scheme for which Defendant was ultimately convicted. By contrast, Defendant offered uncontradicted testimony at trial indicating he had a history of writing checks on overdrawn accounts and then paying the overdraft fees. Thus, Defendant asserts, the testimony from the Howards and Shoemakers was only offered "to try to make [Defendant] look bad" (Court File No. 38, p. 3).

The Court admitted the testimony of the Howards and Shoemakers because it was inextricably intertwined with the evidence of the check kiting scheme.[6] Such evidence "consists of those other acts that are inextricably intertwined with the charged offense or those acts, the telling of which is necessary to complete the story of the charged offense." *United States v. Hardy*, 228 F.3d 745, 748 (6th Cir. 2000) (citations omitted). Sometimes this evidence has been referred to as background evidence. "Proper background evidence has a causal, temporal or spatial connection with the charged offense." *Id.* In this case the evidence introduced by the government demonstrated that at the beginning of the scheme, Defendant's bank account balance contained very small amounts of real money. After he started writing checks on the two accounts and deposited those checks into the accounts, the balances drastically increased, albeit without the deposit of real funds. This scheme would have been discovered in the course of normal bank review if it continued without the introduction of real funds. In fact, one of the banks did become suspicious. To lull the banks into

---

[6] As an initial matter, the Court notes there was no dispute during the trial that Defendant had engaged in check kiting. Nor was it disputed that check kiting is bank fraud. Defendant's position was that he lacked the necessary intent to be guilty of bank fraud.

5

believing he was not engaged in a check kiting scheme, Defendant deposited the checks from the Howards and the Shoemakers into the bank accounts. *Cf. United States v. Yaker*, 87 F. App'x. 532, 534 (6th Cir. 2004) (noting a defendant's use of "lulling letters" to enable that defendant to continue a fraudulent scheme). He could have deposited these checks into other accounts if he wanted to assure the funds would only be used for the construction of the two couples' houses, even if that meant opening up a new account. Once the banks were lulled into a false sense of security by the injection of these real funds, Defendant continued with his check kiting scheme. *Cf. United States v. Seago*, 930 F.2d 482, 485 (6th Cir. 1991) (describing how a defendant used an injection of real funds to continue a check kiting scheme). Thus, the funds from the Howards and Shoemakers were both necessary for the scheme to escape detection and for it to continue as long as it did.[7] Moreover, since the money the Howards and Shoemakers gave to Defendant was used by the banks to cover other checks written by Defendant, those funds amount to a loss sustained by the fraud that was transferred from the banks to the Howards and Shoemakers–a loss that still resulted directly from the fraud.

The Court further concludes Defendant's appeal on this point does not present "a close question or one that could go either way." *Miller*, 753 F.2d at 23. On appellate review, the Sixth Circuit must have a "definite and firm conviction that [this Court] committed a clear error of judgment." *United States v. Davis*, 577 F.3d 660, 666 (6th Cir. 2009) (citations omitted). Given the uncontested fact a check kiting scheme was in operation, the expert testimony offered by the government and the timing of Defendant's deposits of the two couples' payments, the Court finds

---

[7] Defendant sought, received, and deposited payments from both couples in August 2008–temporally connected to the check-kiting scheme, which lasted from late July 2008 until late September 2008. *See Hardy*, 228 F.3d at 748.

6

it unlikely the appellate court will find a "clear error of judgment." Moreover, Defendant has not shown–indeed, has not made any arguments in support of the proposition that–the testimony at issue was "so integral to the merits of the conviction that it is more probable than not that reversal or a new trial will occur if the question is decided in the defendant's favor." *Pollard*, 778 F.2d at 1182 (internal citation and quotations omitted). Accordingly, the Court concludes Defendant's first ground for staying on bond pending appeal must fail.

### 2. Amount of Loss

Defendant's second theory in support of his motion rehashes an argument he unsuccessfully advanced at sentencing: the Court miscalculated the amount of loss for which Defendant was responsible. At sentencing, Defendant objected to the Pre-Sentence Report's loss calculation of $560,000.[8] Following an extended discussion on this point at the sentencing hearing, the Court deducted some of the loss amount for purposes of guidelines calculations, but still found Defendant responsible for a loss of more than $400,000, which, under United States Sentencing Guidelines § 2B1.1(b)(1)(H), amounted to a fourteen-point increase in Defendant's offense level. In his motion, Defendant only adds the issue of the amount of loss attributable to the payments made by the Howards and the Shoemakers is "fairly debatable," and a different loss calculation could "substantially affect the guidelines range" (Court File No. 38, pp. 3-4).

Defendant adds nothing in his motion which he did not already raise at sentencing, and has

---

[8] Specifically, he objected to 1) the alleged $310,000 loss suffered by Northwest Georgia Bank because trial evidence indicated it had been repaid in full; 2) the alleged $100,000 loss suffered by the Howards as part of a check-kiting scheme because that money was paid by the Howards to Dowlen as consideration for a house and no evidence connected that payment to the check-kiting scheme; and 3) the alleged $150,000 suffered by the Shoemakers as part of a check-kiting scheme because they, like the Howards, received the warranty deed for a house and no evidence connected the money to the alleged check-kiting scheme.

7

not in either case demonstrated the question is substantial or that the resolution of the question on appeal will likely result in a reversal, new trial, or a reduced sentence as required under § 3143(b). At sentencing, the Court made a finding on the amount of loss by a preponderance of the evidence. *See United States v. Blackwell*, 459 F.3d 739, 772 (6th Cir. 2006). Following Defendant's objection on this point, the Court affirmatively ruled on the amount of loss given the possible effect on Defendant's sentence and explained its rationale for such a ruling. *Cf. United States v. White*, 492 F.3d 380, 415-16 (6th Cir. 2007) (holding district court judge erred in calculating amount of loss because she "failed to articulate on the record any rationale supporting her factual determination"). In determining the amount of loss, the Court complied with the Sentencing Guidelines' guidance to "make a reasonable estimate of loss," United States Sentencing Guidelines § 2B1.1 cmt. 3(C), which reasonable estimate is subsequently "entitled to appropriate deference," *id.* (citing 18 U.S.C. § 3742(e) and (f)). Defendant provides no explanation why the Court's amount of loss determination presents a novel question, the resolution if which will likely result in a reversal, new trial, a sentence that does not include imprisonment, or "a reduced sentence to a term of imprisonment less than the total of the time already served plus expected duration of the appeal process." 18 U.S.C. § 3143(b)(1)(B). Accordingly, Defendant's second argument falls short.

### 3. Downward Departure

Defendant's final theory in support of his motion also invokes a losing argument from his sentencing hearing. He asserts he is not a "typical white collar defendant" in that his "conduct and character place him outside the heartland" of such defendants (Court File No. 38, p. 4). Thus, Defendant contends, the Court erred by failing to grant his motion for a downward departure. This argument fails on a number of grounds.

First, Defendant failed at sentencing–and offers no additional argument in the present motion–to meet the high bar for justifying a judicial departure. *See Koon v. United States*, 518 U.S. 81, 96 (1996) (noting a trial court "must bear in mind the Commission's expectation that departures based on grounds not mentioned in the Guidelines will be 'highly infrequent'") (citation omitted). "To depart from the sentencing guidelines, as opposed to vary a sentence based on the advisory nature of the guidelines, a district court must find aggravating or mitigating circumstances of a kind or degree not adequately taken into account by the guidelines." *United States v. Lozano-Alvarez*, 226 F. App'x. 531, 533 (6th Cir. 2007). Defendant's motion for downward departure (Court File No. 34) focuses on perceived failings in the proof at trial, and only in the final paragraph argues Defendant has been working, has dependents including a "special needs" stepson, and provides the support for his family. At sentencing, Defendant's counsel repeated these grounds. Exercising its sentencing discretion, the Court determined at sentencing these factors did not warrant a departure, and instead sentenced Defendant at the bottom of the guideline range.

Second, the Court's consideration of Defendant's motion for a downward departure at sentencing forecloses appellate review. *United States v. Coleman*, 188 F.3d 354 (6th Cir. 1999) ("An appellate court may only review a denial of a motion for a downward departure if the district court judge 'incorrectly believed that she lacked any authority to consider defendant's mitigating circumstances as well as the discretion to deviate from the guidelines.'") (quoting *United States v. Landers*, 39 F.3d 643, 649 (6th Cir.1994)). The narrow exception for appellate review of a district court's denial of a downward departure motion–where the district court mistakenly believed it lacked authority to consider mitigating circumstances or the discretion to deviate–does not apply here. The Court, fully aware of its discretion to depart downward, considered Defendant's motion,

9

and denied it. Accordingly, the failure to grant Defendant's motion for a downward departure is not a likely ground for a reduced sentence.[9]

Finally, the Court is leery of arguments suggesting, as Defendant's does, that white collar defendants should be entitled to more lenient treatment than the typical criminal defendant. Although his motion does not explicitly make this argument, Defendant's unsupported claim he is an atypical white collar defendant deserving of different treatment in essence invites this Court to handle him with kid gloves. The Court refuses this invitation, deciding instead to follow the wise words of a fellow district court:

> Federal district courts and judges in the courts of appeals know very well that the Congressional policy behind the Bail Reform Act and the subject of post-conviction and sentencing detention must be wisely administered, in order to protect the criminal justice system from the wrong perception that judges have two measuring sticks, one for regular criminals and a more lenient one for the white-collar defendant.

*United States v. Vazquez-Botet*, 2007 WL 316438, at *2 (D. Puerto Rico Jan. 31, 2007). Defendant cannot expect and will not obtain the privilege of bail pending appeal under the circumstances of this case.

## III. CONCLUSION

Accordingly, the Court will **DENY** Defendant's motion to remain on bond pending appeal (Court File No. 38).

---

[9] The Sixth Circuit will review any other challenges to Defendant's sentence for both procedural and substantive reasonableness. *United States v. Jones*, 445 F.3d 865, 869 (6th Cir. 2006). Defendant, however, has not argued any aspect of his sentence was either procedurally or substantively unreasonable.

An Order shall enter.

**/s/**
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**

11